STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of State of      }
Vermont, Department of       }
Buildings and General Services  }  Docket No. 245-10-00 Vtec
                              }
                              }

## **<u>Decision and Order on Cross-Motions for Summary Judgment</u>**

Appellant Department of Buildings and General Services of the State of Vermont (Department) appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Windsor granting conditional use approval with conditions for the construction of a 3-bay garage at 570 State Farm Road. The State is represented by Assistant Attorney General William H. Rice, Esq. and Special Assistant Attorney General Stacy A. Butler, Esq.; the Town is represented by J. Christopher Callahan, Esq. The parties each have moved for summary judgment.

The following facts are undisputed unless otherwise noted.

The Department-Applicant owns property in the Resource (R-5) zoning district. A portion of the property is surrounded by a fence and contains the Southeast State Correctional Facility. A portion of the property is outside the fence and contained an old one-bay garage.

Material facts are in dispute or at least have not been provided by the parties as to whether the old one-bay garage is a pre-existing non-conforming use in this zoning district, or whether it was built under a prior permit and, if so, what the permit authorized. Material facts are in dispute or at least have not been provided by the parties as to what division of the State used the old one-bay garage. If it was a non-conforming use, it may be extended or expanded under ' 2.4 of the Zoning Regulations.

On July 10, 2000, the Department-Applicant applied for a zoning permit to replace the old one-bay garage with a larger 30' x 50' three-bay garage at property with a mailing address of 570 State Farm Road. The location of the property was described on the application as A Southeast State Correctional Facility.@

The Administrative Officer issued a A Decision of the Administrative Officer@ showing the applicant as A State of Vermont@ and that it was for a conditional use, and referring it to the ZBA and Planning Commission on the following grounds: A change to a prior conditional use approval (increasing & replacing size of an existing structure) in the facility - 1 Bay to 3 Bay garage,@ pursuant to sections 2.3 (accessory structures) and 5.13 (conditional uses) of the Zoning Regulations. The Zoning Administrator= s decision was not appealed and therefore

became final; the issue of whether a conditional use permit was even required for this application therefore may not be challenged at this time.

The Planning Commission appears to have approved the site plan on August 21, 2000. The Planning Commission= s decision was not appealed and therefore became final.

A week later the ZBA approved the conditional use application with conditions in a written decision dated August 28, 2000. The permit was issued by the Administrative Officer on August 30, 2000. The Department appealed from the ZBA= s August 28, 2000 decision and from the issuance of the permit, challenging the findings made and conditions imposed as beyond the authority of the municipality. In particular, the challenged findings[1] and conditions relate to the building= s materials, color, foundation, source of power, equipment, absence of outdoor lighting, absence of connection to the municipal water or sewer system, intended purposes of use, and absence of permanently-assigned personnel.

Material facts are disputed as to whether the existing or the proposed garage is an accessory use or structure related to the correctional facility itself or whether it is instead a use separate from that of the correctional facility, that is, a state-owned office building and maintenance garage known as the A Southern District Maintenance Facility.@

The Zoning Regulations provide for the use category A Public Buildings: Correctional Facility@ as a conditional use in the R-5 zoning district, and provide for the use category A accessory use/structure@ as a permitted use in that district. The Zoning Regulations provide for the use category A Public Building: Maintenance & Storage@ as a conditional use in the Rural Residential (R-40), Medium Density Residential (R-12 and R-12H), and Roadside Business (RB) zoning districts, and provide for the use category A accessory use/structure@ as a permitted use in those districts. Thus, if it is accessory to the correctional facility, it is allowed in the R-5 district as either an accessory permitted use or as an amendment to the conditional use permit for the correctional facility. If it is a separate maintenance garage, it is not a conditional use or a permitted use in the district, although it remains possible that, as an expansion of the one-bay garage, it may qualify for consideration as an expansion to a pre-existing non-conforming use or as an expansion to a use which holds an erroneously-issued but final permit.

The motions for summary judgment focus on whether some of the findings made and conditions imposed by the ZBA are outside the scope of a municipality= s authority under 24 V.S.A. ' 4409(a)(2).

Under 24 V.S.A. ' 4401(b)(1), A except as specifically limited herein, the municipality may adopt zoning regulations to permit, prohibit, restrict, regulate, and determine land development . . . .@ Subsection 4409, entitled A Limitations,@ sets out certain limitations on that broad enabling authority. Section 4409(a)(2) states:

Unless reasonable provision is made for the location of any of the following in a [zoning] bylaw . . . , the following uses may only be regulated with respect to size, height, bulk, yards, courts, setbacks, density of buildings, off-street parking and loading facilities and landscaping or screening requirements:

* * *

(2) State or community owned and operated institutions and facilities.

We must apply the plain meaning of a statute unless its meaning is unclear. In ' 4409 the zoning enabling act did not preempt any of the listed uses or prevent municipalities from regulating them. (Section 4409 may be contrasted in this respect with ' 4406, which requires or prohibits certain types of municipal regulations. For example, ' 4406(4) prevents municipalities from excluding mobile homes except on the same basis as it excludes conventional housing.) We note that the uses cited in ' 4409(a)[2] are all uses that tend to serve regional interests beyond the boundaries of a municipality itself, and are uses that a municipality might prefer to exclude rather than to address or manage the potential problems or social issues inherent in hosting such a facility. To ensure that such facilities may be located as needed anywhere in the state, ' 4409(a) provides a sanction for municipalities that fail to make a reasonable provision to allow the listed uses to be sited within the town. That is, either a municipality provides that such facilities may be located somewhere reasonably within the municipality, or else the municipality may only regulate the dimensional, parking, landscaping and screening aspects of such facilities, and may not regulate whether or where they can be located within the municipality. The corollary of this interpretation is that, if a municipality has made reasonable provision for uses on the list to be located within the municipality, then the municipality is free to regulate them under the broad, general authority of ' 4401(b)(1).

The two clauses of ' 4409(a) are thus linked: if the municipality provides for the location of the listed uses, then it may regulate them as it would regulate any other use. Section 4409(a) does not provide two separate and independent regulatory authorizations, one to regulate location and other to regulate the dimensions, parking, landscaping and screening of the listed types of facilities. Nor does ' 4409(a)(2) provide some sort of exemption for state-owned facilities based on the state= s sovereignty. Rather, the uses listed in ' 4409(a) are all treated the same under the statute, whether they are private for-profit, nonprofit, religious, municipal or state uses. Of course, the legislature would be free to add an exemption for state-owned buildings, as the authority for municipalities to zone derives entirely from state statute. But it has not done so in ' 4409(a)(2).

The Vermont cases discussed by the parties do not require any contrary result. They all appear to have been decided under zoning regulations which did not make reasonable provision for the location of the listed facilities, and so did not trigger the arm of the statute at issue in the present case, and did not discuss that issue. Morse v. Vermont Div. of State Bldgs., 136 Vt. 253 (1978) restricted the Town to regulating only the listed aspects of the facility under ' 4409(a), but the decision does not suggest that the Town= s zoning regulations in effect in 1977 made > reasonable provision for= the state residential treatment facility at issue in that case. Similarly, in Vermont Div. of State Bldgs. v. Town of Castleton Bd. of Adjustment, 138 Vt. 250, 258 (1980) the zoning regulation did not purport to make any provision for the location of such state facilities, but by its terms only regulated the listed aspects of such facilities, and in any event, the dispute in that case was regarding the appropriate setback, which is within the list allowed to be regulated in any event. Recently, in City of S. Burlington v. Vermont Dept. of Corrections, 171 Vt. 587(2000), the Court held that the State is bound by any conditions in any local permits it did

not appeal, even if the municipal body had lacked jurisdiction to issue those local permits at the time, and did not explore the issue posed by the present case. Also see, <u>Appeal of State of Vermont, Dept. of Buildings and General Services</u>, Docket No. 269-11-00 Vtec (Vt. Envtl. Ct., Nov. 19, 2001) (town had not made specific provision for the location of state facilities in its zoning bylaw, therefore the aspects of the correctional facility which the town may regulate are the listed physical and external attributes of the facility, not its internal use or occupancy. See, <u>In Re: Northwest State Correctional Facility</u>, Docket No. S 377-94 Fc (Franklin Superior Ct., March 15, 1995).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the Town= s Motion for Summary Judgment is GRANTED and the Department= s Motion for Summary Judgment is DENIED. As the Town of Windsor has made reasonable provision for the location of state-owned or community-owned and operated institutions and facilities in its zoning bylaw, it may regulate aspects of such facilities beyond those listed in ' 4409(a).

We will hold a brief telephone conference with the parties on Monday, February 11, 2002 at 9:30 a.m. to determine whether any issues remain for determination in this appeal. The parties should be prepared to discuss the following issues in the conference. We note that the findings that constitute the Department-Applicant= s own description of its project easily could be restated in language making it clear that they are not conditions being imposed on the Department. Of the six actual conditions in the ZBA= s permit, numbered 2 through 7, Condition 3, that the building be built to Department of Labor and Industry standards, does not appear to be authorized by the Town= s own zoning regulations (an issue separate from its validity under ' 4409(a)). Conditions 2, 6 and 7 merely state the law; that is, they contain the standard requirements of the zoning regulations that the project be built as proposed by the applicant, that any sign proposed in the future for the facility will require approval under the sign regulations, and that the permit will expire if construction is not begun in a year. With those out of the way, it appears that the remaining two conditions (relating to landscaping and to avoiding the need for screening of outdoor lighting if proposed for the future) may fall within the authority of the Town even under the Department-Applicant= s view of ' 4409(a).

Done at Barre, Vermont, this 5th day of February, 2002.

_____
Merideth Wright
Environmental Judge

---

**Footnotes**

**1** The challenged elements found in the 'findings' section of the decision rather than in the actual 'conditions' section of the decision all seem to derive from the Department-Applicant's own description of its project, and are not actually conditions imposed on the project by the ZBA.

**2** Public utility power generating plants and transmission lines, state and community institutions and facilities, schools, churches, hospitals, regional solid waste management facilities and hazardous waste management facilities.